Bernard J. Rosen/S.B. No. 41538
Beverly Hills Law Building
424 S. Beverly Drive
Beverly Hills, CA 90212
Tel:  (310) 203-9600
Fax:  (310) 203-9696
e-mail: bernardrosenlaw@aol.com

Attorney for Defendant
HUMBERTO OLVERA

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )  No. CR 08-1191-GW-021 |
| Plaintiff, | ) |
| | ) **Renewed Motion of Defendant** |
| | ) **Humberto Olvera for a Separate** |
| v. | ) **Trial.** |
| | ) |
| JESUS MARTINEZ, et al., | ) **Fed.R.Crim.Proc. 14** |
| | ) Date:    Nov. 30, 2009 |
| Defendants. | ) Time:    10:00 a.m. |
| _____ | ) Before:  Judge Wu |

To: THE CLERK OF THE ABOVE-ENTITLED COURT AND THE
UNITED STATES OF AMERICA AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on the 30th day of November, 2009, at
10:00 a.m., or on such other date and/or time as the Court may set, in the
courtroom of the Honorable George H. Wu, United States District Judge,
defendant Humberto Olvera, will renew his motion for a separate trial
from his co-defendants.

//

//

1

The Motion is based upon the attached Memorandum of Points and Authorities and such further evidence and argument as the Court may permit at the hearing on the motion.

Dated: November __11__, 2009        Respectfully submitted,

/s/ Bernard J. Rosen
BERNARD J. ROSEN
Attorney for Defendant
HUMBERTO OLVERA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

Over the defendant's objection, the Court has granted the government's motion to continue the trial of this case to March 16, 2010. On October 22, 2009, during proceedings in which the Court denied defendant's application to be released from detention on bond, the Court suggested to counsel, instead, filing a renewed motion for a separate trial. Following the Court's suggestion, the defendant is filing such a motion at this time.

Rule 14 of the Federal Rules of Criminal Procedure provides, in part, that "If the joinder of offenses or defendants in an indictment … appears to prejudice a defendant … the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Justice, it is respectfully submitted, requires the Court to do something on defendant's behalf; hopefully, it will be permitting him to be tried separate from -- and earlier than -- his co-defendants.

There are, it is submitted, two matters of note as far as Rule 14 is concerned: "prejudice" is not defined therein and, in any event, whatever prejudice there may be, it need only "appear[]" to exist in order for a party to obtain relief, *i.e.*, a party apparently need not establish prejudice as an actual fact. The defendant submits that it "appears" that he may be prejudiced in two different ways if forced to go to trial with his many co-defendants.

The first manner of prejudice "appears" from an analysis of the Indictment itself. The Indictment names 28 persons and accuses them, amongst other things, of being members of a "racketeering enterprise" which engaged in "multiple acts involving murder, … robbery, … and … narcotics trafficking …." (Count one; General Allegations, ¶ 15, p. 12.) The RICO conspiracy count -- count one of thirty substantive criminal counts –

then alleges the commission of 205 overt acts beginning as early as 1993 (overt act 1) through September, 2008. (Overt act 205.)

The defendant, though charged in two counts – two and three, is actually accused of only one criminal act: participating, with only co-defendant Alfredo Ornelas, in a violent assault upon two persons identified only as "A.M." and "B.R." on August 2, 2004.[1] Nevertheless, he is joined for trial, at the moment, with, besides Ornelas, twenty six other named alleged "enterprise" members, and any number of unnamed unindicted "members," accused of a myriad of other violent crimes including two actual murders – overt acts 76 and 93 of count one (both committed in 2007, well over two years after the commission of the sole act of "racketeering" activity alleged against him) and fourteen other violent assaults alleged to be the commission of attempted murders – overt acts 1, 18, 29, 52, 65, 85, 89, 102, 106, 107, 108, and 205 and counts four and fourteen.[2]

*A fortiori*, it is submitted, when a person accused of participating in the commission of a single crime, even a violent crime, is joined in trial with 26 other defendants accused of committing, or somehow being

---

[1] Count two alleges the crime as a "conspiracy to murder" those two individuals; count three alleges the crime as an "attempt to murder" the same two individuals. The same incident appears to be alleged, as an "attempt to kill," as overt act 30 of count one, in which count the defendant is not named.

[2] There is a some degree of inconsistency as those crimes are alleged throughout the Indictment. Count four, for instance, alleges a VICAR "attempt to murder" committed May 27, 2005. The same incident appears to be alleged in overt act 47 as merely an "attempt to stab." Some of these inconsistencies are of a greater degree. Overt act 52 alleges that three of the co-defendants committed an "attempt[] to kill" on August 25, 2005; VICAR count five, however, appears to allege the same crime committed by the same three co-defendants but merely as an "assault … with a dangerous weapon." There appears to be the same inconsistency between VICAR count six and overt act 65, count seven and overt act 85, count eight and overt act 89, count nine and overt act 107, count ten and overt act 106, count eleven and overt act 108, and count twelve and overt act 205.

involved in the commission of, sixteen other extremely violent crimes – two actual murders and fourteen attempts – there is going to be some prejudicial "spill-over," or at least the appearance thereof. Moreover, only one of those crimes, overt act 29, committed on July 16, 2004, is proximate in time to the crime of which the defendant stands accused and thirteen of them were committed long after that event.

This latter fact is of particular significance, it is submitted, given the government's concession that in order to prove the defendants' guilt of RICO conspiracy, and, presumably, of also committing a violent crime "for the purpose of maintaining and increasing position in … an enterprise engaged in racketeering activity" (count two, ¶ 4; count three, ¶ 2), it must prove that "the defendants knew the general nature of the conspiracy and that the conspiracy extends beyond their individual roles … (that is) *whether the situation would logically lead an alleged conspirator to suspect he was part of a larger enterprise.*" (Government's Motion for Order Continuing Trial ["Continuance Motion"], filed 8/12/09, docket item #339, at 13; internal citations omitted, emphasis added.) Where defendant Olvera is concerned,[3] "the situation" that would lead him to suspect he was part of a larger enterprise when he involved himself in the conduct alleged to have occurred on August 2, 2004, was the situation that existed on August 2, 2004, which can only be proven by what occurred on that date and <u>prior</u> thereto. The events occurring after August 2, 2004, no matter how numerous, no matter how serious, are entirely irrelevant to the question of Olvera's knowledge of his "situation" on that date.

This tends to take the wind out of the sails of one of the government's arguments, made in its initial Continuance Motion in

---

[3] And co-defendant Ornelas, too, assuming, as expected, he eventually joins in this motion.

anticipation of objections to its motion by defendants charged with only a single crime, that it must prove the existence of a racketeering enterprise as to each count, thus separating defendants for trial would require it "to put on the same evidence-intensive case – involving dozens of serious personal attacks on innocent civilians and rival gang members as well as numerous narcotics trafficking offenses – no matter how many … trials. … Thus, multiple trials, if permitted, will result in the virtually identical presentation of voluminous evidence." (*Id.*, 11.) Whatever the truth of those words where other defendants may be concerned, they do not accurately describe the government's position should the Court grant defendant Olvera's motion for a separate trial on counts two and three.

Indeed, it is not beyond the realm of possibility that a severance might not result in any duplication of effort on the government's part, at all. Given the volume of criminal activity allegedly pursued by the remaining co-defendants after August 2, 2004, it is not inconceivable, it is submitted, that the government might choose not to prove up counts two and three (and overt act 30) against any other defendants going to trial separately. Although, obviously, this is a choice for the government to make, it is, it is submitted, one of the considerations a court might want to keep in mind when attempting to balance the competing interests at stake. In any event, it is submitted, the trial time needed to prove defendant's alleged involvement in the assault on "A.M." and "B.R.," in his counsel's estimation, is no more that one half day.

As indicated above, there is a second way in which it "appears" that the defendant may be prejudiced if forced to go to trial with his co-defendants – his continuing time in detention. This was a subject also first broached by the government in its Continuance Motion wherein it argued that each defendant's "sentencing exposure," including that of defendant

Olvera, somehow supported the government's argument for the continuance. (*Id*., at 21.) Thus, the government argued, defendant Olvera's exposure would be "70-87 months." (*Ibid*.) Would it?

Suppose the defendant was in fact convicted as charged – guilty of counts two and three. Under the Sentencing Guidelines he is facing, as the government originally argued (*ibid*.), a potential offense level of 26 (base offense level of 14 increased by 2 levels for more than minimal planning and by no more than 10 levels for weapons use and bodily injury – U.S.S.G, §§ 2E1.1(a), 2A2.2(a)(b)(1), (2), and (3).) But that is far from the only sentencing consideration that the Court should concern itself with.

As has been argued at great length in defendant's several motions seeking his release from custody on bond, this Indictment has not been drawn on a blank slate. As the government has conceded, the criminal conduct underlying counts two and three is the same criminal conduct for which the defendant was prosecuted, convicted, and sentenced to prison in state court – the Superior Court in and for the County of Santa Barbara. It is the policy of the Sentencing Guidelines, however, that even if the Court were to believe that additional imprisonment were warranted for the federal conviction, nonetheless, it should grant the defendant "credit" against that sentence for the state sentence already imposed and served. (U.S.S.G. § 5G1.3 and App. Note 2(D), § 5K2.23.) Application of these Guidelines, it is submitted, will substantially reduce defendant's sentencing "exposure." Nor, is this the totality of reasons why defendant's "exposure" might be reduced.

The government has provided the defense with all of the discovery pertaining to the investigation of the criminal conduct underlying counts two and three – the investigative reports of detectives of the Santa Barbara Police Department. Copies of those reports have already been provided to

the Court as defendants exhibits A through G to his counsel's "Second Declaration … in Support of Defendant Olvera's application For Release on Bond (filed, under seal, on February 3, 2009, as docket item 201) and are incorporated herein by reference. Those reports establish that the injuries inflicted on "A.M." and "B.R." were inflicted by a knife, that defendant Olvera is <u>not</u> the person who wielded the knife, that, as described by the government in its "Response to Defendant Olvera's Ex Parte Application For A Protective Order re Discovery" (filed, under seal, on October 23,2009, as docket item #436), the defendant  "had 'cruised' with [his] fellow gangsters to the rival territory where the attack occurred" (*id*., at 5), but that he had "cruised" over in a different vehicle than the vehicle in which the knife-wielding "gangster" rode, that it remains questionable, therefore, whether he knew that that suspect was armed,[4] and that, in any event, the defendant, himself, was not armed.

It is possible, it is submitted, that the defendant, even if convicted, would be a candidate for the awarding of "mitigating role" decreases in offense level, U.S.S.G. § 3B1.2; certainly a "minimal" participant in the bevy of "racketeering activity" the government claims it's going to prove, and even a "minor" participant in the knife-wielding assault by another gang member.

And, finally, reference to the state investigation and proceedings raises another possibility about sentencing "exposure." As the Court was advised in the "Objection" defendant Olvera filed to the government's Continuance Motion, at least one other adult gang member was prosecuted and convicted for his involvement in that underlying assault, yet the government has chosen not to indict him in this case (Objection

---

[4]    Other suspects interviewed by the investigating officers claimed that they were unawares that the person who inflicted the injuries was armed with a knife until after the assault and their return to their vehicle.

[filed as docket item #360-3 on August 26, 2009], 5 fn. 3.) Nor, obviously, has the government chosen to indict the knife-wielding suspect or any of the other then-juveniles involved in that assault. Amongst the factors that a Court must "consider" in determining a just and reasonable sentence in a criminal case is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct …." (18 U.S.C. § 3553(a)(6).) Even if the "letter" of that provision might not apply, might it's "spirit" not be involved, as by considering as "disparities" the "passes" the government gave to those other participants who otherwise appear equally, if not more so, "guilty of similar conduct"?

As the defendant originally argued in his "Objection" to the government's Continuance Motion, even if convicted, the defendant is potentially eligible for a "mitigated" sentence, thus every day he remains in custody because his co-defendants aren't ready for trial or because the government needs substantially more trial time to prove their guilt, than his, he may be prejudiced by being detained beyond the length of any sentence he may be ordered to serve. (Objection, 5-6.) And, as he also observed, there, "in such a complex and defendant-laden case," another requested continuance by one party or another is "not [un]likely." (*Id.*, 6 fn.4).

## Conclusion

It "appears" that Defendant Olvera will be "prejudiced' in two respects by being forced to trial with his co-defendants: from the "spill-over" effect of his being tried with co-defendants charged with numerous, serious offenses almost all of which were committed after the single criminal act he has been indicted for was committed and which are, therefore, irrelevant, for any purpose, as to him, and from his being forced

to remain detained, although presently ready for trial, while his many co-defendants' counsel need more time to get prepared to defend their clients.

Under such circumstances, the defendant is asking the Court to provide him (and co-defendant Ornelas when he joins in the request), a trial separate from his other co-defendants or such "other relief that justice requires." (Rule 14 of the Federal Rules of Criminal Procedure.)

Respectfully submitted

/s/ Bernard J. Rosen
BERNARD J. ROSEN
Attorney for Defendant
HUMBERTO OLVERA

'